UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

POLLAFKO, INC., JOEL LEFKOWITZ, and JOEL POLLAK,

                    Plaintiffs,

v.

OKULOS COMÉRCIO VAREJISTA DE PRODUTOS ÓPTICOS LTDA, a/k/a OKULOS LTD., ÓTICA LENTES DE GRAU COMÉRCIO VAREJISTA DE PRODUTOS ÓPTICOS EIRELI a/k/a OKULOS II, LTD., and MARCIO ZUKIN,

                    Defendants.

**MEMORANDUM AND ORDER**
22-cv-5497 (NGG) (RLM)

---

LaSHANN DeARCY HALL, United States District Judge:

      Pollafko, Inc. ("Pollafko"), Joel Lefkowitz ("Lefkowitz") and Joel Pollak ("Pollak," and collectively "Plaintiffs") bring breach of contract, unjust enrichment, breach of fiduciary duty, and fraud claims against Okulos Comércio Varejista De Produtos Ópticos LTDA, a/k/a Okulos Ltd. ("Okulos"), Ótica Lentes de Grau Comércio Varejista de Produtos Ópticos Eireli, a/k/a Okulos II, Ltd. ("Okulos II," and collectively the "Okulos Defendants") and Marcio Zukin ("Zukin," and collectively with the Okulos Defendants, "Defendants") related to the parties' Purchase Agreement. Plaintiffs move pursuant to Rule 64 of the Federal Rules of Civil Procedure and C.P.L.R. §§ 6201, 6210, 6211, and 6301 for an order of attachment and temporary restraining order (1) enjoining Defendants from transferring their assets from their bank accounts until there is a final disposition on the merits in the above-entitled action; and (2) granting such other and further relief as the Court may deem just and proper.

## BACKGROUND[1]

Plaintiff Pollafko is a business corporation and an investment vehicle that maintains its principal office in New York and is owned by Plaintiffs Pollak and Lefkowitz. (Compl. ¶ 4, ECF No. 1.) Okulos is a Brazilian limited liability company that distributes eyeglasses and Okulos II is a Brazilian limited liability company, neither of which have the authority to conduct business in New York. (*Id.* ¶¶ 5–6.) Defendant Zukin is a citizen and resident of Brazil who is affiliated with these two companies. (*Id.* ¶ 7.)[2] According to the Complaint, Plaintiffs and Defendants entered into a Purchase Agreement (the "Agreement") on or about March 23, 2022. (*Id.* ¶ 10.) The Agreement was signed by Zukin in his personal capacity and on behalf of the Okulos Defendants and by Lefkowitz and Pollak as managers of Pollafko. (*Id.* ¶ 14.)

Under the Agreement, Zukin agreed to sell his 70 percent interest in the Okulos Defendants to Pollafko at a purchase price of $200,000. (*Id.* ¶ 10.) Lefkowitz and Pollak, on behalf of Pollafko, paid the purchase price in full on March 28, 2022, via two separate wires, and this money was deposited into Zukin's Charles Schwab Bank account. (*Id.* ¶ 15.) In addition to the purchase price, Lefkowitz and Pollak also invested $160,000 into Okulos investments by sending payments to Zukin. (*Id.* ¶ 16.) In total, Plaintiffs allegedly paid the Defendants more than $360,000. (*Id.* ¶ 17.) Notwithstanding payment of the purchase price and additional investment, Zukin has failed to transfer Okulos's assets to Okulos II and has failed to have shares in Okulos II issued to Pollafko as required under the Agreement. (*Id.* ¶ 18.) Plaintiffs demanded Zukin return all monies paid to him by the Plaintiffs, but Zukin has refused. (*Id.*)

---

[1] The following findings of fact are taken from Plaintiffs' Complaint and declaration in support of the Plaintiffs' memoranda of law in support of Plaintiffs' request for an order of attachment and temporary restraining order.

[2] The Complaint and memoranda of law in support of Plaintiffs' request for an order of attachment and temporary restraining order does not explain Zukin's corporate relationship with the Okulos Defendants. For purposes of this memorandum of order, the Court deems Zukin as an affiliate of these two companies.

**DISCUSSION**

I.     **Attachment**

The provisional remedy of attachment is available in a federal action when it would be available "under the law of the state where the [district] court is located." Fed. R. Civ. P. 64. That said, attachment is a "drastic remedy" that may "unfairly prejudice defendants, particularly when[, as here, it is] requested ex parte at the inception of litigation." *Plaintiff Funding Holding, Inc. v. Carrera*, No. 17–CV–257(ARR)(ST), 2017 WL 7411183, at *2 (E.D.N.Y. Feb. 6, 2017). Indeed, a plaintiff bears a "heavy burden" in attempting to establish the right to an attachment. *Chartwell Therapeutics Licensing LLC v. Cintron Pharma LLC*, 16 Civ. 3181 (MKB) (CLP), 2018 WL 1402239 at *4 (E.D.N.Y. Mar. 4, 2018) (quoting *Nat'l Audubon Soc., Inc. v. Sonopia Corp.*, No. 09 CV 975, 2009 WL 636952, at *2 (S.D.N.Y. Mar. 6, 2009)), *report and recommendation adopted*, 2018 WL 1401321 (E.D.N.Y. Mar. 20, 2018). Under New York law, a plaintiff may obtain a pre-judgment order of attachment only if it satisfies each of the following elements: "(1) 'there is a cause of action;' (2) it is probable that plaintiff will succeed on the merits; (3) one or more grounds for attachment under C.P.L.R. § 6201 exists; and (4) the amount plaintiff seeks from defendant exceeds all counterclaims known to plaintiff. *Id.* (citing C.P.L.R. § 6212(a)). Notably, these statutory requirements are "strictly construed in favor against whom it is employed." *Brastex Corp. v. Allen Int'l, Inc.*, 702 F.2d 326, 332 (2d Cir. 1983).

In pursuing attachment, Plaintiffs rely solely upon C.P.L.R. § 6201(1), which is designed to allow a plaintiff to "obtain[] jurisdiction over and secur[e] judgments against nondomiciliaries residing without the state." *Plaintiff Funding Holding*, 2017 WL 7411183, at *3 (citation omitted). It provides, in relevant part, that a court may grant attachment if a plaintiff demands and would be entitled to a money judgment against a defendant who is a "nondomiciliary residing without the state, or is a foreign corporation not qualified to do business in the state."

3

N.Y. C.P.L.R. § 6201.  That said, an attachment may not issue under § 6201(1) simply because a plaintiff alleges that the defendant is a non-domiciliary residing out of state.  Rather, where, as here, "attachment is being used as a means of security . . . courts should issue the attachment only upon a showing that drastic action is required for security purposes." *Fratelli Italiani, LLC v. Mironova*, No. 18 Civ. 7013 (CM), 2019 WL 3759160, at *7–8 (S.D.N.Y. Apr. 11, 2019) (internal quotations and alterations omitted); *see also Disney Enters., Inc. v. Finanz St. Honore, B.V.*, 13-cv-6338 (NG) (SMG), 2017 WL 1862211, at *2 (E.D.N.Y. May 8, 2017) (stating that, in addition to satisfying the statutory requirements set out under CPLR § 6212, the "Second Circuit . . . made clear[] [that] the party seeking an attachment must show the existence of one of the two purposes of an attachment, either the need to secure a judgment or to obtain jurisdiction[]"); *Plaintiff Funding Holding*, 2017 WL 7411183, at *3.  That is, under these circumstances, New York courts require "an additional showing that something, whether it is a defendant's financial position or past and present conduct, poses a real risk of the enforcement of a future judgment." *Plaintiff Funding Holding*, 2017 WL 7411183, at *3 (citations omitted).  Plaintiffs fail to do so.

Plaintiffs allege that Zukin is a citizen of Brazil and the Okulos Defendants are Brazilian companies.  (Pls.' Mem. L. Supp. Pls.' Ex Parte Mot. for Order of Attach. and TRO ("Pls.' Mem.") at 7, ECF No. 2-2.)  And, as such, according to Plaintiffs, Zukin's property in New York consists of bank funds, which can be easily transferred to Brazil.  (*Id.* at 9–10.)  Absent from Plaintiffs' submission is any information that would persuade this Court that the Defendants' financial position, or past and present conduct might pose a real risk, which are typically present where courts grant a request for an attachment under § 6201.  *See, e.g., Disney Enterprises*, 2017 WL 1862211, at *2 (granting attachment where plaintiff alleged facts demonstrating defendants'

4

"precarious financial state" and "evasive conduct," such as defendant's filing of a voluntary discontinuation of business abroad and the U.S. Patent and Trademark Office deeming certain of defendant's trademarks abandoned). Indeed, at least one court in this district has already rejected barebone allegations of the sort pleaded here in support of an attachment. In *Plaintiff Funding Holding*, the plaintiff filed (but did not serve) a complaint along with an *ex parte* application for an attachment of defendants' bank accounts. 2017 WL 7411183, at *2. Plaintiff relied on § 6201(1) as the ground for attachment. *Id*. at *3. The court denied Plaintiff's application, because the plaintiff failed to adduce evidence that the defendants lacked "sufficient assets," would have chosen "to hide or otherwise dispose of their assets," or that the defendants' financial position, or past and present conduct, posed a "real risk of the enforcement of a future judgment." *Id.* at *3. The same outcome is warranted here.

In an effort to persuade the court otherwise, Plaintiffs direct the Court to a series of cases that were not only decided in another district but are also either patently distinguishable or are simply unpersuasive. For example, Plaintiffs cite *Herzi v. Ateliers De La Haute-Garonne*, for support. In that case, the court found that the plaintiff presented "sufficient evidence" to demonstrate the need for an attachment. No. 15-cv-7702, 2015 WL 8479676, at *3 (S.D.N.Y. Oct. 13, 2015). The plaintiff adduced evidence that most of the defendant's assets were "outside of New York," and that the defendant engaged in behavior that demonstrated to the court the defendant would "attempt to render itself judgment-proof in New York." (*Id.* at **2–3.) Among other things, the plaintiff showed that the defendant "ke[pt] secret from its counsel of six years the culmination and final outcome" of the settlement in an infringement suit against it. *Id.* at *3. The court held that this behavior suggested that the defendant "may attempt to transfer overseas

5

or otherwise conceal what assets it has in New York to avoid payment of the judgment." *Id.* No such evidence is present here.

Plaintiffs also cite a case from the Southern District of New York, by which this Court is not bound, *Graubard Mollen Dannett & Horowitz v. Kostantinides*. There, the court found that the plaintiff demonstrated that the defendants met § 6201(1) because the defendants were non-domiciliaries who had offices in several international locations. *See* 709 F. Supp. 428, 432 (S.D.N.Y. 1989). However, the Court is unpersuaded by the 30 years old reasoning in that case because the court there did not determine whether the plaintiff adduced evidence that the defendants' precarious financial position or conduct posed a real risk of the enforcement of a future judgment. The Plaintiffs in this case must, and did not, plead sufficient facts that go beyond allegations that Defendants are located abroad and unsupported allegations of Plaintiffs' fear that Defendants may transfer assets to Brazil.[3] Therefore, Plaintiffs' motion is denied.

## II.  Temporary Restraining Order

To obtain a temporary restraining order, a plaintiff must demonstrate: (1) a likelihood of success on the merits, (2) a likelihood that it will suffer irreparable harm if a preliminary injunction is not granted, (3) that the balance of hardships tips in its favor, and (4) that the public interest is not disserved by relief. *See JBR, Inc. v. Keurig Green Mountain, Inc.*, 618 F. App'x 31, 33 (2d Cir. 2015) (outlining the standard for a preliminary injunction).[4] Plaintiff has failed to make the requisite showing. Indeed, the same deficiencies that defeat Plaintiffs' request for an

---

[3] Even if Plaintiffs satisfied § 6201(1) and all other elements that must be met for a court to grant an attachment, such an order is still a "discretionary remedy." *Plaintiff Funding Holding*, 2017 WL 7411183, at *5. In *Plaintiff Funding Holding*, for example, the court did not exercise its discretion to grant an order of attachment because the defendants had "not been notified of this lawsuit," and the court found that where a "plaintiff seeks to initiate its lawsuit by attaching defendants' assets," this "militate[s] against attachment." *Id.* at *5. This Court also declines to exercise its discretion to attach Defendants' assets at the beginning of this lawsuit.

[4] It is well established that in this Circuit, the standard for an entry of a temporary restraining order is the same as for a preliminary injunction. *Andino v. Fischer*, 555 F. Supp. 2d 418, 419 (S.D.N.Y. 2008).

attachment similarly defeat Plaintiffs' request for a temporary restraining order. That is, Plaintiffs fail to plead any facts of immediate risk that might establish irreparable harm, which "is the single most important prerequisite for the issuance of a preliminary injunction." *Faiveley Transp. Malmo AB v. Wabtec Corp.*, 559 F.3d 110, 118 (2d Cir. 2009) (internal quotations and citation omitted).

It is a "cardinal rule" that, as a general matter, allegations of monetary harm are insufficient to establish irreparable harm. *Kebapci v. Tune Core Inc.*, No. 15-CV-7141, 2016 WL 6804919, at *3 (E.D.N.Y. Nov. 16, 2016). Nonetheless, in the "rare situation[]" where a movant can "allege facts (not conclusions) and provide evidence" of the defendant's "intent to frustrate any judgment on the merits," courts may grant an exception. *Id.* However, it is not enough to assert a "blanket contention that defendants are 'transferring their assets' and 'trying to avoid satisfying any judgment.'" *Id.*

Here, Plaintiffs' allegations do not even go that far. Rather, Plaintiffs merely speculate that because Defendants reside in or are located in Brazil and have property in New York that is "easily transferrable," once Defendants "learn of this application, they will likely try to move other monies out of Plaintiffs' reach," frustrating the enforcement of a judgment. (Pls.' Mem. at 9.) These allegations are insufficient to establish irreparable harm.

## CONCLUSION

Plaintiffs' motion for an order of an attachment is DENIED. It is further ORDERED that the Defendants appear and show cause at a preliminary injunction hearing on a date set by Judge Nicholas Garaufis as to why a preliminary injunction should not issue restraining Defendants' transfer of assets from their bank accounts until the final disposition of the above-titled action.

It is further ORDERED that personal service of a copy of this Order and the papers upon which it is based, upon Defendants on or before September 23, 2022, be deemed sufficient service.

SO ORDERED.

Dated: Brooklyn, New York
       September 23, 2022

/s/    LDH
LaSHANN DeARCY HALL
United States District Judge